UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANNE JEDIDI-STANDLEY,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | CASE NO. 3:17-CV-05207-DWC<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff Anne Jedidi-Standley[1] filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 5.

---

[1] The Court acknowledges that during Plaintiff's May 2012 and April 2014 administrative hearings, she stated "Jedidi" had been dropped from her last name. AR 42-43, 88-89. However, the Court's records, docket, and the parties' briefs refer to Plaintiff as Jedidi-Standley. As such, the Court uses that as her last name in this Order.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS- 1

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when he failed to provide specific and legitimate reasons, supported by substantial evidence, for giving limited weight to the medical opinions of Drs. Mary Lemberg, M.D., and Dana Harmon, Ph.D. Had the ALJ properly considered the opinions of these two doctors, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is therefore not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On June 18, 2010, Plaintiff filed an application for DIB, alleging disability as of April 15, 2010. *See* Dkt. 7, Administrative Record ("AR") 147. The application was denied upon initial administrative review and reconsideration. *See* AR 147. Plaintiff has had three ALJ hearings. The first hearing was held before ALJ Rebekah Ross on May 16, 2012. AR 40-85. In a decision dated September 14, 2012, ALJ Ross determined Plaintiff to be not disabled. AR 144-62. Plaintiff's request for review of the ALJ's decision was granted by the Appeals Council, which vacated ALJ Ross's hearing decision and remanded Plaintiff's claim to the ALJ. AR 168-71.

Plaintiff received a second hearing before ALJ Ross on April 23, 2014. *See* AR 86-113. On May 12, 2014, the ALJ granted a partially favorable decision, finding Plaintiff disabled as of July 1, 2013, her 50th birthday. AR 7-30. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1276-78; 20 C.F.R. § 404.981, § 416.1481. Plaintiff appealed to the United States District Court for the Western District of Washington, which remanded the case

1 | for further proceedings. *See* AR 1289-1300; *Jedidi v. Colvin*, 2016 WL 1470201 (W.D. Wash.
2 | April 15, 2016).

3 | Plaintiff received a third hearing before ALJ S. Andrew Grace on September 13, 2016. AR 1207-23. In a decision dated January 13, 2017, ALJ Grace found Plaintiff disabled as of July 1, 2013. AR 1174-98. Plaintiff did not file written exceptions with the Appeals Council, making the September 13, 2016 decision the final decision of the Commissioner. 20 C.F.R. § 404.981, § 416.1481. Plaintiff now appeals ALJ Grace's January 13, 2017 decision.[2]

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by failing to provide specific and legitimate reasons, supported by substantial evidence, to reject the medical opinions of: (1) Dr. Mary Lemberg, M.D.; and (2) Dr. Dana Harmon. Dkt. 9, p. 3.

Because the ALJ found Plaintiff disabled as of July 1, 2013, the relevant time period for this case is the alleged onset date – April 15, 2010 – through the date prior to the finding of disability – June 30, 2013. *Id.*

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**I.    Whether the ALJ properly considered the medical opinion evidence.**

Plaintiff argues the ALJ erred in his evaluation of the opinion evidence from examining physicians Drs. Lemberg and Harmon. Dkt. 9, pp. 3-10.

---

[2] When stating "the ALJ" or "the ALJ's decision" throughout this Order, the Court is referencing ALJ Grace and his January 13, 2017 decision.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

  A. <u>Dr. Lemberg</u>

Plaintiff maintains the ALJ erred when he failed to include in the RFC all limitations assessed by examining physician Dr. Lemberg. Dkt. 9, pp. 3-8, 11.

Dr. Lemberg conducted a comprehensive psychiatric evaluation of Plaintiff on December 2, 2010. AR 596-603. After her examination, Dr. Lemberg ascertained the following:

> The claimant does have the ability to perform simple and repetitive tasks, and would not have difficulty completing detailed and complex tasks, based upon her performance on the mental status exam. The claimant would find it difficult to adapt to new environments based on our interview today and mental status exam. The claimant demonstrated impairments today with short-term memory and calculation. The claimant would not have difficulty accepting instructions from supervisors, but would have some difficulty interacting with co-workers and the public. The claimant can attend work on a consistent basis, though would be limited in the tasks she could do from psychiatric and physical reasons. The claimant could not complete a normal workday or workweek without problematic interruption from her psychiatric conditions. The degree of her tearfulness and perseveration would be barriers to employment and is impacting her daily functioning. I anticipate the claimant to have significant difficulty dealing with the usual stress encountered in a competitive work environment.

AR 601-02.

The ALJ gave significant weight to Dr. Lemberg's determinations that Plaintiff could perform simple and repetitive tasks, work consistently, and accept instructions from supervisors. AR 1192. He also gave significant weight to Dr. Lemberg's finding that Plaintiff would have problems interacting with coworkers and the public. AR 1192. However, the ALJ gave little weight to various other parts of Dr. Lemberg's assessment, which Plaintiff challenges. *See* AR 1192-93; Dkt. 9, pp. 3-8.

The ALJ provided five points for discrediting Dr. Lemberg's opinion. **First**, the ALJ stated:

> Little weight is given to the assessment that the claimant would have difficulty adapting to new environments, that she would be limited in completing tasks due to psychiatric and physical reasons, that she would be unable to complete a normal workday or workweek without interruptions from her psychiatric conditions and that tearfulness and preservation as well as stress would limit the claimant's ability to perform work activities. These findings are subjective and based mostly on the claimant's self-reporting, which is inconsistent with medical treatment records, indicating limited and routine care along with improvement.

AR 1192.

The ALJ gave little weight to this portion of Dr. Lemberg's opinion because her opinion appeared to be subjective and based on Plaintiff's self-reporting. AR 1192. An ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). This situation is distinguishable from one in which the doctor provides her own observations in support of her assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200). Notably, however, a clinical interview and mental status evaluation are "objective measures"

which "cannot be discounted as a self-report." *See Buck v. Berryhill*, -- F.3d ---, 2017 WL 3862450, at *6 (9th Cir. Sept. 5, 2017).

In this case, Dr. Lemberg's findings were based upon a comprehensive psychiatric evaluation of Plaintiff. *See* AR 596-603. Dr. Lemberg's psychiatric evaluation included both a clinical interview and mental status examination. *Id.* As such, Dr. Lemberg's report was neither subjective nor primarily based upon self-reporting. *See Buck*, 2017 WL 3862450, at *6. The ALJ therefore erred in giving little weight to Dr. Lemberg's findings for being subjective and based on self-reports, as these are not specific, legitimate reasons under these circumstances. *See id.*

The ALJ also gave little weight to a portion of Dr. Lemberg's assessment of Plaintiff because he found it was "inconsistent with medical treatment records," which he said indicated "limited and routine care along with improvement." AR 1192. An ALJ need not accept an opinion which is inadequately supported "by the record as a whole." *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Nonetheless, a conclusory statement finding an opinion inconsistent with the overall record is insufficient to reject the opinion. *See Embrey*, 849 F.2d at 421-22. As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Id.* (internal footnote omitted).

Here, the ALJ's assertion that Dr. Lemberg's findings were "inconsistent with medical treatment records" is a conclusory statement that does not meet the level of specificity required to reject Dr. Lemberg's opinion. For example, the ALJ failed to identify any evidence in the record and explain how it is inconsistent with Dr. Lemberg's opinion on Plaintiff's limited

abilities to adapt to new environments and complete tasks. *See* AR 1192. Hence, the ALJ's conclusory statement was not a specific, legitimate reason to reject Dr. Lemberg's opinion. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

**Second**, regarding Dr. Lemberg's conclusion that Plaintiff would have interruptions throughout the workday, the ALJ stated:

> [Dr. Lemberg's] assertion . . . is unsupported by the contemporaneous treatment records, the generally unremarkable examination, and unjustified by objective factors. As noted in the prior decision, [Plaintiff's] mood is generally described as good or stable, she is better when taking medications, and she is doing activity.

AR 1192.

The ALJ once again provided vague, conclusory reasons for giving little weight to Dr. Lemberg's opinion. Specifically, the ALJ's statement that Dr. Lemberg's opinion was "unsupported by the contemporaneous treatment records" was conclusory because the ALJ did not state which records were relevant, or how they were relevant, to Dr. Lemberg's opinion. Likewise, the ALJ's statement that Dr. Lemberg's opinion was based on "the generally unremarkable examination" was conclusory because the ALJ did not explain what about the examination was unremarkable. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review"). The ALJ's remark regarding Plaintiff's mood, medication, and activity was similarly conclusory because the ALJ did not explain how these things relate to Plaintiff's interruptions. *See* AR 1192; *Embrey*, 849 F.2d at 421-22 (conclusory reasons do "not achieve the level of specificity" required to justify an ALJ's rejection of an opinion). Accordingly, these

were not specific, legitimate reasons to justify rejecting Dr. Lemberg's finding regarding Plaintiff's interruptions throughout the workday.

The ALJ further gave little weight to Dr. Lemberg's opinion regarding Plaintiff's interruptions during the workday because he determined Dr. Lemberg's conclusion was "unjustified by objective factors." AR 1192. In fact, as discussed above, Dr. Lemberg's opinion was based on objective records because she conducted a clinical interview and mental status examination. *Buck*, 2017 WL 3862450, at *6. Thus, this was not a specific and legitimate reason to reject Dr. Lemberg's finding.

**Third**, the ALJ discussed Dr. Lemberg's opinion that Plaintiff "would have 'significant difficulty' in dealing with the usual stress encountered in competitive work, and that she would be unable to complete a normal workday/week due to psychiatric reasons." AR 1192. Specifically, the ALJ concluded:

> [T]his does not mean that the claimant would be unable to deal with the type of work accommodated within the framework of the claimant's residual functional capacity, it is inconsistent with her daily activities, and it is unsupported by the GAF score, indicating fairly moderate symptoms.

AR 1192.

Notwithstanding Dr. Lemberg's findings, the ALJ concluded Plaintiff would be able to work within the framework of her RFC. AR 1192. However, the ALJ did not explain how Plaintiff's RFC accommodates Dr. Lemberg's findings. *See* AR 1192. Likewise, although the ALJ asserted Dr. Lemberg's findings were inconsistent with Plaintiff's daily activities, he did not say which of Plaintiff's activities were inconsistent with Dr. Lemberg's opinion or explain how Plaintiff's activities were inconsistent with Dr. Lemberg's findings. *See* AR 1192. He also did not provide any record citations, which could have supported his opinion. *See* AR 1192. Hence, the ALJ's reasoning was conclusory and these were not specific, legitimate reasons to reject Dr.

Lemberg's opinion regarding Plaintiff's ability to cope with stress and complete a normal workday/week schedule. *Embrey*, 849 F.2d 418, 421-22.

The ALJ further opined Dr. Lemberg's conclusions were unsupported by Plaintiff's global assessment of functioning ("GAF") score. AR 1192. A GAF score is "a rough estimate of an individual's psychological, social, and occupational functioning." *Garrison v. Colvin*, 759 F.3d 995, 1002 n.4 (9th Cir. 2014) (internal quotations and citation omitted). A GAF score is medical opinion evidence which cannot be summarily dismissed. *Vanbibber v. Carolyn [Colvin]*, 2014 WL 29665, at *3 (W.D. Wash. Jan 3, 2014). However, GAF scores "do not control determinations of whether a person's mental impairments rise to the level of a disability." *Garrison*, 759 F.3d at 1002 n.4 (citation omitted).

In this case, the ALJ concluded Plaintiff's GAF score was inconsistent with Dr. Lemberg's findings regarding Plaintiff's ability to cope with workplace stress and complete a workday/week. But, the ALJ failed to explain how Plaintiff's GAF score and Dr. Lemberg's opinion were inconsistent. *See* AR 1192. The ALJ also did not provide any discussion or record citations to support his conclusion. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."). Hence, the ALJ's conclusory statement was not a specific, legitimate reason to reject Dr. Lemberg's findings on this issue.

**Fourth**, the ALJ gave limited weight to Dr. Lemberg's opinion that Plaintiff would be unable to cope with stress in the workplace because:

> [T]his assessment is speculative and based on a one-time assessment. Furthermore, the claimant was under stress at the time she was seeking financial assistance. This statement appears to be based upon the claimant's exaggerated self-reported levels of depression and anxiety in the context of this evaluation. For

| | |
|---|---|
| 1 | example, less than a month before Dr. Lemberg's evaluation, the claimant reported in the context of treatment that she was in a better mood due to Effexor medication, which was working well. Exhibit 34F/6. |
| 2 | |

3  AR 1193.

4  The ALJ gave little weight to Dr. Lemberg's assessment of Plaintiff's ability to cope with

5  stress because he found her assessment "speculative." AR 1193. But, the ALJ did not state what

6  exactly was "speculative" about Dr. Lemberg's opinion. *See* AR 1193. As such, this was not a

7  specific and legitimate reason to reject Dr. Lemberg's conclusion about Plaintiff's ability to cope

8  with stress. *Embrey*, 849 F.2d at 421-22.

9  In addition, the ALJ discounted Dr. Lemberg's opinion because it was "based on a one-

10  time assessment." AR 1193.  An examining doctor, by definition, does not have a treating

11  relationship with a claimant and usually only examines the claimant one time. *See* 20 C.F.R. §

12  404.1527(c). "When considering an examining physician's opinion . . . it is the quality, not the

13  quantity of the examination that is important. Discrediting an opinion because the examining

14  doctor only saw claimant one time would effectively discredit most, if not all, examining doctor

15  opinions." *Yeakey v. Colvin*, 2014 WL 3767410, at *6 (W.D. Wash. July 31, 2014). Accordingly,

16  discrediting Dr. Lemberg's opinion because she only saw Plaintiff once was not a specific and

17  legitimate reason for doing so.

18  The ALJ further asserted Dr. Lemberg relied on Plaintiff's "exaggerated self-reported

19  levels of depression and anxiety." AR 1193. To support this proposition, the ALJ cited one

20  record in which Plaintiff reported taking Effexor was working well for her mood. *See* AR 896;

21  1193. Nonetheless, the ALJ failed to explain how Plaintiff's mood improvement on Effexor was

22  relevant to her stress-coping abilities. *See Embrey*, 849 F.2d at 422 (an ALJ cannot merely state

23  facts he claims "point toward an adverse conclusion and make[] no effort to relate any of these

24

objective factors to any of the specific medical opinions and findings he rejects"). Additionally, "it is error for an ALJ to pick out a few isolated instances of [mental health] improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017 (citation omitted). The ALJ therefore erred in relying upon this single report to discount Dr. Lemberg's finding because his reasoning was conclusory and the ALJ did not consider Plaintiff's overall mental health.

With respect to the ALJ's assertion that Dr. Lemberg improperly relied on Plaintiff's self-reports, the Ninth Circuit has held:

> Psychiatric evaluations . . . will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry . . . Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.

*Buck*, 2017 WL 3862450, at *6 (citations omitted). Here, Dr. Lemberg is a psychiatrist whose evaluations necessarily rely on Plaintiff's self-reports. *See id.* Hence, rejecting Dr. Lemberg's findings for being based on Plaintiff's self-reports was not a specific and legitimate reason for doing so.

**Lastly**, the ALJ found:

> [Dr. Lemberg's] evaluation was not specifically performed to address physical issues, which Dr. Lemberg stated could interfere with work. These findings are overall inconsistent with the claimant's daily activities and it appears that Dr. Lemberg had limited access to the claimant's longitudinal treatment record.

AR 1193.

The ALJ gave little weight to Dr. Lemberg's conclusion that Plaintiff's physical issues could interfere with work because the evaluation was not designed to address physical issues. AR 1193. Dr. Lemberg is a medical doctor who has obtained her M.D. *See* AR 596. "Although a medical doctor's area of specialty is relevant, a physician with a doctoral medical degree (M.D.)

is qualified to assess a claimant's physical functional limitations." *Fischer v. Colvin*, 2013 WL 5437571, at *9 (W.D. Wash. Sept. 27, 2013). Given that Dr. Lemberg attended medical school, further training in the specialty of psychiatry did not deprive her of the capabilities she obtained with her M.D. *See id*. This, therefore, was not a specific and legitimate reason to discredit Dr. Lemberg's opinion regarding Plaintiff's physical abilities. On remand, the ALJ shall not discredit Dr. Lemberg's opinion because it was partly based on Plaintiff's physical limitations.

In addition, the ALJ discounted Dr. Lemberg's findings about Plaintiff's physical capabilities because he ascertained Dr. Lemberg's findings were inconsistent with Plaintiff's "daily activities." AR 1193. Nevertheless, the ALJ again failed to explain which of Plaintiff's activities were inconsistent with, and how they conflicted with, Dr. Lemberg's opinion. Thus, this conclusory reason was not a specific, legitimate reason to reject this part of Dr. Lemberg's opinion. *Embrey*, 849 F.2d at 421-22. If the ALJ intends to reject Dr. Lemberg's findings as inconsistent with the medical treatment records on remand, he must provide specific record citations and explain how they are inconsistent with Dr. Lemberg's findings.

The ALJ's final reason for giving little weight to Dr. Lemberg's opinions regarding Plaintiff's physical issues interfering with work was because she had "limited access" to Plaintiff's "longitudinal treatment record." AR 1193. Defendant maintains, citing *Bayliss*, "a doctor's failure to review other medical records in a case can provide a basis to discount that doctor's opinion." Dkt. 15, p. 11 (citing *Bayliss*, 427 F.3d at 1217). In *Bayliss*, the Ninth Circuit affirmed the ALJ's decision to give less weight to an examining physician because the physician did not review objective medical data or reports from treating physicians, but instead based his opinion entirely on the claimant's complaints and information submitted by family, friends, and a former counselor. 437 F.3d at 1217. Unlike in *Bayliss*, Dr. Lemberg reviewed two of Plaintiff's

treatment records and also relied on her own observations, results from the mental status examination, and Plaintiff's reported health history and subjective complaints. Hence, this was not a specific, legitimate reason to give less weight to Dr. Lemberg's opinion under these circumstances.

For the above stated reasons, the Court finds the ALJ has not provided specific and legitimate reasons, supported by substantial evidence, to give little weight to Dr. Lemberg's opinion. Accordingly, the ALJ erred.

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Had the ALJ properly considered all of Dr. Lemberg's opined limitations, the RFC may have included additional limitations. For example, the RFC may have included the limitations that Plaintiff would have trouble adapting to new environments, would struggle completing tasks, and could not complete a normal workday/week. The RFC did not contain these limitations. Therefore, if Dr. Lemberg's opinions were included in the RFC and the hypothetical questions posed to the vocational expert, the ultimate disability determination may have changed for the relevant time period. Accordingly, the ALJ's failure to properly consider Dr. Lemberg's opinion regarding Plaintiff's limitations is not harmless and requires reversal.

B. Dr. Harmon

Plaintiff next asserts the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for giving little weight to some of the findings by Dr. Dana Harmon, Ph.D. Dkt. 9, pp. 3, 8-11. On August 6, 2013, Dr. Harmon completed a psychological and psychiatric evaluation of Plaintiff. AR 1024-47. Specifically, Dr. Harmon conducted a clinical interview, mental status examination, and personality assessment inventory. AR 1024-47.

As summarized by the ALJ, Dr. Harmon found the following:

> [T]he claimant was mildly to moderately limited in her ability to understand, remember, carry out, and persist in tasks by following short, simple instructions, performing activities within a schedule/maintaining regular attendance, and adapting to changes in a routine work setting. A mental status examination fell within limits.

AR 1194. Dr. Harmon also determined Plaintiff was markedly impaired in her ability to communicate and perform effectively in a work setting, complete a normal workday/workweek without interruptions from psychological impairments, and maintain appropriate behavior in a work setting. AR 1026.

Regarding Dr. Harmon's findings, the ALJ opined, in relevant part:

> I give little weight to Dr. Harmon's findings that the claimant has marked impairment in communicating effectively in a work setting, completing a normal workday/workweek, and maintaining appropriate behavior in a work setting because this is inconsistent with the record as a whole and with the claimant's demonstrated functioning, and appears to be largely based upon the claimant's self-reported symptoms. Lastly, Dr. Harmon's rating of the claimant's GAF score from 50-55 is not useful in my analysis of this case for the reasons explained above.

AR 1195.[3]

---

[3] The ALJ gave partial weight to a portion of Dr. Harmon's opinion and little weight to Plaintiff's GAF score. AR 1194-95. Plaintiff does not challenge these findings by the ALJ. *See* Dkt. 9, pp. 8-10. Accordingly, the Court does not discuss these parts of the ALJ's decision.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS- 14

As stated above, an ALJ must do more than state that a physician's findings are contrary to the record; he must specifically explain why a physician's opinion was flawed. *See McAllister*, 888 F.2d at 602; *Embrey*, 849 F.2d 421-22. Here, the ALJ summarily concluded Dr. Harmon's findings were inconsistent with the record and Plaintiff's functioning. *See* AR 1195. The ALJ failed, however, to cite any part of the record and specifically explain how it was inconsistent with Dr. Harmon's opinion. Without more, these conclusory statements were not specific, legitimate reasons to give little weight to Dr. Harmon's opinions.

Moreover, as previously discussed, an ALJ may reject a physician's opinion if it is primarily based upon a claimant's properly discounted self-reports. *Tommasetti*, 533 F.3d at 1041. Yet as the Ninth Circuit has held, clinical interviews and mental status examinations are objective measures, not self-reports. *Buck*, 2017 WL 3862450 at *6. In this case, Dr. Harmon conducted a clinical interview, mental status examination, and personality assessment inventory. AR 1024-47. Accordingly, Dr. Harmon's findings were based upon objective measures and this was not a specific, legitimate reason to give little weight to his findings.

For the above stated reasons, the Court concludes the ALJ failed to provide specific, legitimate reasons supported by substantial evidence for giving little weight to Dr. Harmon's opinion. Therefore, the ALJ erred. Had the ALJ properly considered Dr. Hurst's opinion, the RFC and the hypothetical questions posed to the vocational expert may have included additional limitations. As the ultimate disability decision may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled during the relevant time period. Accordingly, Defendant's decision to

deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 20th day of September, 2017.

David W. Christel
United States Magistrate Judge